1  RIDDICK LAW APC
2  Jason T. Riddick (SBN 235980)
   Robert Grijalba (SBN 321044)
3  jason@riddick-law.com
   rob@riddick-law.com
4  30745 Pacific Coast Highway, #353
   Malibu, California 90265
5  Tel: (424) 323-4545

6
   Attorneys for plaintiff
7  MELIAN LABS, INC. dba MYTIME

8  **UNITED STATES DISTRICT COURT**
   **CENTRAL DISTRICT OF CALIFORNIA**

11 MELIAN LABS, INC. dba MYTIME, a Delaware corporation,

            Plaintiff,
       vs.

   DEBORAH LANE MATTESON AKA DEBI LANE, an individual; CHRISTO M. DEMETRIADES; and DOES 1 - 25, inclusive,

            Defendants.

Case No.:

**COMPLAINT FOR:**
1. **Inducing Breach of Contract**
2. **Intentional Interference with Contractual Relations**
3. **Promissory Estoppel**
4. **False Promise**
5. **Fraudulent Conveyance**
6. **Conspiracy**
7. **Aiding and Abetting Fraudulent Transfer of Assets**

1
COMPLAINT

Plaintiff Melian Labs, Inc. dba MyTime ("Plaintiff" or "MyTime"), for its complaint against Deborah Lane Matteson also known as Debi Lane ("Lane"), Christo M. Demetriades ("Demetriades") and Does 1-25, collectively "Defendants", alleges as follows:

## INTRODUCTION

1. This is an action for torts related to an underlying breach of contract, all arising under the laws of the State of California.

## PARTIES AND RELEVANT THIRD PARTIES

2. Plaintiff is, and at all relevant times herein was, a Delaware corporation registered to do business and doing business in California.

3. On information and belief, defendant Deborah Lane Matteson also known as Debi Lane is ("Lane"), is an individual residing and domiciled in in New York, New York, who previous resided and was domiciled in Boise, Idaho at all relevant times herein.

4. On information and belief, defendant Christo M. Demetriades (together with Lane, the "Individual Defendants") is, and at all relevant times herein was, an individual residing and domiciled in Scottsdale, Arizona.

5. On information and belief, third-party LBW3 Holdings, LC, formerly known as Lunchboxwax Holdings, LLC ("LBW3" or "Lunchbox" or "Lunchbox Wax Holdings") is a Delaware entity doing business at all relevant times herein in Boise Idaho, and which is and was at all relevant times owned and controlled by Demetriades and Lane.

6. Plaintiff is the Claimant and LBW3 is the Respondent in an arbitration currently pending before the American Arbitration Association ("AAA") in Los Angeles, California, Case No. 01-23-0002-3876 (*Melian Labs, Inc. dba MyTime vs. Lunchboxwax Holdings, LLC*) concerning claims related to LBW3's breach of a Master Services Agreement ("MSA"). These claims factually overlap with the claims brought by this lawsuit. However, Lane and Demetraides and various other Lunchbox entities whose form is unknown are not signatories to the arbitration clause contained within the MSA, and the Individual Defendants have refused to arbitrate Plaintiff's claims against them in the pending arbitration, necessitating the filing of this lawsuit against them to preserve Plaintiff's claims .

7. Plaintiff is ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of defendants named herein as Does 1 through 25 inclusive, and therefore sues these Doe defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when the same have been ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Doe defendants is responsible in some manner for the occurrences herein alleged and that Plaintiff's damages as herein alleged were proximately caused by them.

8. On information and belief, in doing the acts and things herein alleged, each defendant acted individually for himself, herself, or itself, and as the agent, employee, representative, joint venturer, co-conspirator, successor and/or partner of each of the other defendants (including the unknown defendants) and was at all times acting within the course and scope of such agency, employment, representation, joint venture, conspiracy, and/or partnership. Each defendant has ratified, approved and authorized the acts of each of the remaining defendants with full knowledge of those acts.

9. On information and belief, there is a common ownership or control between the aforementioned defendants; as applicable, that each is a stockholder, officer and/or director of the other; as applicable, that each was and is so controlled by the other such that the monies of one are commingled and intermingled with the monies of the other; that there is a unity of interest and ownership between them; that the credit of one is used for the credit of the other; that the obligations of one were paid for by the other; that each corporate entity defendant was organized and capitalized for a sum of money insufficient to meet its reasonable requirements; that each corporate entity defendant was organized for the purpose of escaping liability and contractual obligations to Plaintiff; that each used the other as mere instrumentalities or conduit for business; that the Individual Defendants concealed their personal business activities behind the corporate shell of LBW3 or related unknown entities sued herein as Does 1-25 (hereafter, also called the "Lunchbox Defendants"); that the Individual Defendants, and each of them, used the Lunchbox Defendants, and each of them, to procure contracts, labor, services or merchandise for other entities or persons; that the Lunchbox Defendants, and each of them, diverted the assets to and from the Individual Defendants, and each of them, or to other persons or entities to the detriment of creditors such as

Plaintiff; that the Individual Defendants, and each of them, entered into contracts on behalf of the Lunchbox Defendants, and each of them, to avoid performance and as a subterfuge for illegal, improper, fraudulent, and/or wrongful transactions; that the Individual Defendants, and each of them, commingled funds and other assets with the Lunchbox Defendants, and each of them, failed to segregate funds, and made unauthorized diversions of funds or other assets to other than company uses; that the Individual Defendants, and each of them, treated the assets of the Lunchbox Defendants, and each of them, as their own; that the Individual Defendants, and each of them, failed to obtain authority to issue or subscribe to stock of the corporate entity defendants, and each of them; that the Individual Defendants, and each of them, held out that they or each of them was personally liable for the debts of Lunchbox Defendants, and each of them; that the Lunchbox Defendants, and each of them, failed to maintain adequate company records or confused the records of the Lunchbox Defendants and the Individual Defendants; that the Individual Defendants, and each of them, and the Lunchbox Defendants, and each of them, were the instrumentalities, conduits, adjuncts and alter egos of each other; that the Individual Defendants, and each of them, have managed the Lunchbox Defendants, and each of them, to avoid personal liability and to defraud creditors; and that unless the fiction of the separateness of the Individual Defendants and the Lunchbox Defendants is ignored, great injustice will result and fraud will be sanctioned, all to the irreparable damage and injury to Plaintiff, which will affect Plaintiff's ability to recover and enforce any recovery herein.

## JURISDICTION AND VENUE

10. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000. Plaintiff MyTime is a citizen of Delaware doing business in California , Defendant DEMETRIADES is a citizen of Arizona, and Defendant Lane is a citizen of either New York or Idaho.

11. Venue and personal jurisdiction in this Court are proper because this is where the events giving rise to the claims occurred. Also, the Master Services Agreement that Demitrades and Lane caused their company LBW3 to enter into with MyTime, the breach of which forms the basis for this lawsuit, is to be governed by the laws of the State of California.

**FACTUAL ALLEGATIONS**

12. Plaintiff is in the business of providing an online scheduling, automated marketing and point of sale platform, named "MyTime," to mid-market and enterprise service retailers. Plaintiff's online booking platform can be integrated into a retailer's website and mobile apps, as well as Google Search and Google Maps, Bing, Facebook, and Instagram, thereby enabling customers to find, book, and transact with the retailer from anywhere they engage with its brand. Plaintiff's automated marketing system increases client retention and visit frequency. MyTime automates the many tedious, manual operational tasks so a retailer can focus on its service and its customers. Plaintiff's cloud-based platform is scalable, secure, and ready for any size deployment, and has won Best Local Commerce Service of 2017 from the Local Search Association and has been featured by both Apple and Google as "Best New App" in their respective App Stores.

13. In early 2020, defendant Demetriades approached Plaintiff with interest in having Plaintiff become Lunchbox' exclusive supplier of various websites, services, and software that facilitate online and in-store scheduling of appointments for services, point of sale services, payment processing services, automated and two-way communication between franchisees and clients, reporting and analytics, listing and reputation management, staff management and time tracking, and various customer relationship management tools.

14. On or about September of 2020, Lunchbox and Plaintiff began earnest negotiations regarding entering into a master services agreement regarding Plaintiff's provision of the aforementioned services and software products. As a result, the parties exchanged drafts of a 'Master Services Agreement for the MyTime Point of Sale and Business Management System' ("MSA").

15. During the negotiations, defendant Demetriades and Natalie Dobbs, who was Lunchbox' legal and compliance director, with full authority from Lunchbox, repeatedly and consistently represented that "LunchboxWax Holdings, LLC" was the "Franchisor" of the 49 Lunchbox franchises and the owner of the "company owned" salons. In addition, defendant LunchboxWax Holdings's counsel, Warshawsky Seltzer, PLLC, made similar representations to Plaintiff. Indeed, based upon those representations, which were false, Plaintiff understood defendant

LunchboxWax Holdings to be the franchisor of the 49 Lunchbox franchises, to which Plaintiff would be providing its services and software products.

16. In reliance on those affirmative misrepresentations, on October 23, 2020, Plaintiff entered into the MSA with LunchboxWax Holdings, the entity Plaintiff believed was the franchisor. The MSA continues to misrepresent defendant LunchboxWax Holdings as the franchisor.

17. Lunchbox and Warshawsky Seltzer, PLLC continued to conceal the fact that defendant LunchboxWax Holdings was not in fact the franchisor. On information and belief, the true franchisor was defendant LBW3.

**Plaintiff Diligently Prepared For A Rollout To Over 50 Locations**

18. The MSA made clear that time was of the essence in rolling out MyTime software and services into LunchboxWax locations: "Rollout to all Merchant locations shall be completed by March 31, 2021. Notwithstanding the forgoing, the Parties will work in good faith to expedite the Pilot Program and rollout process to complete the rollout as quickly as practicable." (MSA § 2(e).) Thus, a commitment was made to ensure that the rollout of MyTime would occur not later than March 31, 2021. In addition, Plaintiff engaged employees across multiple teams in the company, including sales, project management, onboarding, engineering, customer support, quality assurance and executive management teams, to make sure that six pilot locations were up and running with MyTime within weeks of the execution of the MSA. Following the execution of the MSA, Plaintiff deployed extensive custom development engineering and other resources to meet the tight deadline, which meant that such resources could not be used on other potential and existing customers and projects.

19. By the end of December 2020, Plaintiff had been working closely with the pilot locations. As a result of those efforts and interactions, certain franchisees requested that enhancements be made to Plaintiff's software product to better serve the specific needs of Lunchbox. Accordingly, after discussing the matter with defendant Demetriades in December 2020, Plaintiff committed additional resources to ensure that the custom development work was completed in time for the March 31, 2021 rollout deadline. In preparation for the rollout and in reliance on the full value of the MSA, Plaintiff invested substantial amounts of sales, project management, engineering,



1  onboarding, quality assurance, executive management, and training time, resources conservatively
2  estimated to cost hundreds of thousands of dollars.

### The Conspiracy to Further Defraud Plaintiff Commenced

4  20. On information and belief, in January/February 2021, while Plaintiff was busy extensively working to meet the March 31, 2021 rollout deadline, defendant Demetriades, Lunchbox and Warshawsky Seltzer, PLLC, began secret discussions with WellBiz Brands, Inc. ("WellBiz") for the purpose of WellBiz acquiring all of Lunchbox' assets. These secret discussions were unknown to Plaintiff, and were intentionally kept secret from Plaintiff.

21. On information and belief, at some point prior to March 16, 2021, WellBiz, defendant Demetriades, Lunchbox, and Warshawsky Seltzer, PLLC, discussed the fact that Lunchbox were due to commence the rollout of Plaintiff's services and software system to the remainder of Lunchbox' forty-nine (49) franchisees, which were not already live, and the other Lunchbox Defendants-owned salons prior to March 31, 2021. However, on information and belief, because WellBiz operated other franchises, including Elements Massage, Fitness Together, Amazing Lash Studios, and Drybar, which had a different point of sale and business management system in place, WellBiz did not want to use Plaintiff's platform. WellBiz, defendant Demetriades, Lunchbox, and Warshawsky Seltzer, PLLC, kept these facts a secret and concealed them from Plaintiff.

22. Between March 16, 2021 and July 16, 2021, WellBiz, Lunchbox, and defendant Demetriades, conspired to and did conceal truths from Plaintiff, and further conspired to and did make numerous misrepresentations to Plaintiff, and take other actions, including but not limited to those described below, for the purpose of tricking Plaintiff into not filing a lawsuit for injunctive relief and damages prior to the closing of the deal so they could consummate their deal and reap the benefits thereof to the detriment of Plaintiff ("Conspiracy to Defraud Plaintiff").

23. On March 25, 2021, on information and belief, WellBiz caused to be made filings with the Delaware Secretary of State establishing "LBW Franchise, LLC", which was to be the acquiring entity for the purchase of substantially all of Lunchbox' assets. Following the acquisition, sometime between July 16, 2021 and the present, WellBiz caused the name of the acquiring entity to be changed from "LBW Franchise, LLC" to "Radiant Waxing Franchise, LLC."

24. By mid-April 2021 it was known to the Individual Defendants and Lunchbox Defendants that the acquisition would not be completed for several months. Accordingly, on April 16, 2021, defendant Demetriades engaged in another teleconference with Plaintiff's CEO and requested that the rollout date for the remainder of the franchises and Lunchbox Defendants-owned salons be pushed out until after the company acquisition was completed. However, Plaintiff's CEO was highly concerned about defendant Demetriades' request and about the breach of the MSA that had already occurred, and that defendant Demetriades was talking about further delays in implementation, which meant delays to Plaintiff's receipt of benefits under the MSA. As a result, Plaintiff's CEO did not agree to any further delays.

25. Because defendant Demetriades had been unsuccessful, the Individual Defendants and Lunchbox Defendants changed tactics. On April 19, 2021, WellBiz's CEO, Jeremey Morgan, and its CTO, Steve Labrie, participated in a teleconference with Plaintiff's CEO. Morgan and Labrie convinced Plaintiff's CEO into agreeing to further delay by stating that he was concerned about risks that would be present for the successful completion of the acquisition if they were in the middle of a point-of-sale platform migration.

26. Plaintiff agreed in principle to pushing out the rollout deadline to September 1, 2021, on the condition that the MSA would be amended to include a provision for liquidated damages in the event that the rollout did not occur. Shortly thereafter, Plaintiff provided a "First Amendment to Master Services Agreement," however, Lunchbox delayed signing same through the end of June 2021.

27. By the end of June 2021, Plaintiff's patience was worn out. Accordingly, it began preparing to file a lawsuit for injunctive relief and damages. Plaintiff communicated this to defendant Lane.

28. On July 2, 2021, Plaintiff's CEO wrote to defendant Lane and the two engaged in the following email correspondence:
> Plaintiff: …. We've had multiple months to resolve this and we gave you a transparent deadline of when we needed an agreement in place by, which had to prior to the acquisition. Since the courts will be closed on Monday, we needed to file this lawsuit today.
> Lane: Ethan, I have been working with Laura on this today. I'm not sure where the misconnect on your side is, but I think we have agreed to terms. Is this not the goal?

COMPLAINT

<u>Plaintiff</u>:   Another two months has passed, and I understand that no agreement has been made since LunchboxWax delayed its rollout due to the acquisition by WellBiz.  As you know, the executed MSA signed on October 23, 2020 between our two companies stated that, (b) Application to All Merchant Locations. All Merchant locations must be live with MyTime by March 31, 2021. Franchisor will be liable to pay for all monthly MyTime Scheduler™ Fees for each Merchant location that fails to go live by March 31,2021. Since we haven't received payment or come to an amicable resolution, we have no choice but to file a lawsuit in the Superior Court of California, Los Angeles County for the full value of the contract plus attorney fees.  I would like to have given the two parties more time to resolve this matter outside of court, but given that LunchboxWax is being acquired and will no longer exist on July 6, 2021, we have no choice but to file this lawsuit today. As your franchisees have each individually signed a joinder to this MSA, we may also be required to inform them about the lawsuit as they enjoined into the agreement. On a personal note, I'm extremely dismayed that the launch wasn't executed as agreed on and you are unable to comply with the terms of the MSA, leaving us with no choice but to take legal action. MyTime has worked tirelessly over the last 18 months, investing hundreds of thousands of dollars and building dozens of features including major enhancements such as TrueLark integration, a full referral program, the ability to buy and apply memberships in the same ticket, changes to credit card terminals to support logos and tipping, data migration and training to your franchisees, in addition to many other projects completed at LunchboxWax's request.
I understand the impact to LunchboxWax is significant, given this lawsuit will result in potential exposure of over half a million dollars, and I have no desire to harm you or your business. If you'd like to give me a call today, you can reach me directly at 415-297-0533.

29.     Thereafter, also on July 2, 2021, defendant Lane again emailed Plaintiff again, stating: "It is our full intention to make this partnership and project a success. We still agree that September 1st launch date is achievable, however, because we are transitioning to WellBiz, we have added 3 months as a buffer. With this, we have agreed to a flat-fee penalty of $20,000 per month if we should go beyond September 1st. This will incentivize LunchboxWax and WellBiz to launch on September 1st, which we knows [sic] a concern for you. As mentioned, we fully intend to launch as expected, but understand that there could always be unforeseen circumstances that could inhibit the Pilot's success, so we have added an extra security measure in the amount of $180,00 [sic] in case of failure to launch. This should give you the security that you need to move forward with the deliverables, which we need to make this launch a success." Defendant Lane further wrote: "We are

aligned that there is no termination permitted, which is covered in the original document and does not need to be here."

30. Later on July 2, 2021, defendant Lane sent Plaintiff a request to sign a "Third Party Consent" in conjunction with the asset purchase transaction. However, when Plaintiff sought clarifications regarding the asset purchase transaction, defendant Lane responded that "WellBiz is an affiliate of LBW Holdings and LBW Franchise, which will be acquiring the agreement. WellBiz will manage the brand on behalf of the LBW entities." In response, Plaintiff's CEO specifically stated: "[our] main concern is to protect our interests and ensure that the contract is not being held by an entity that could easily go bankrupt and put our contract at risk." However, defendant Lane continued to conceal the truth about the terms and conditions of the asset purchase transaction from Plaintiff, including that the aforementioned entities would not in fact be acquiring the MSA.

31. Plaintiff and defendant LunchboxWax Holdings entered into a written first amendment to the MSA on or about July 2, 2021. The acquisition was postponed from July 5, 2021 until July 16, 2021. Pursuant to the terms of the MSA, as amended, Plaintiff and defendant LunchboxWax Holdings agreed that Plaintiff would furnish certain services and software to defendant LunchboxWax Holdings in exchange for the receipt of certain payments from defendant LunchboxWax Holdings.

32. On information and belief, Plaintiff's indication of its intention to file a lawsuit was communicated by defendant Lane to her co-conspirators, which threatened to scuttle the acquisition as the investors responsible for financially backing the acquisition would become naturally reluctant to invest with a threat of litigation looming.

33. These developments prompted WellBiz to entice Plaintiff with the prospective opportunity of adopting the MyTime platform across WellBiz's "full panoply of Franchise companies." Specifically, on July 8, 2021, approximately one week before the closing on the asset purchase transaction, the CEO of WellBiz wrote Plaintiff's CEO flattering him that MyTime was impressive and falsely dangling promises of future opportunities for Plaintiff, to wit:

> "[o]n the other side of the LBW acquisition, we'd want to evaluate myTime for WBZ with the following things in mind … :  How well suited is it for other WBZ concepts from a studio-level perspective (eg, Elements, Amazing Lash, etc)…..  How well does myTime integrate into our broader technology platform (Salon Clouds, etc, etc)…..

> Absent this LBW acquisition, we wouldn't be prioritizing additional changes to our POS relationships in the short term….. For myTime, the likely endgame is either a) 500+ installed locations across the WBZ network….

34. On September 1, 2021, Plaintiff discovered the true nature of the Conspiracy to Defraud Plaintiff, when, on behalf of the Individual Defendants and Lunchbox Defendants, Warshawsky Seltzer, PLLC wrote a letter to Plaintiff. Notwithstanding the litany of contrary representations that the Individual Defendants and Lunchbox lavished on Plaintiff over the six previous months, the letter informed Plaintiff for the first time that the transaction was structured as a limited asset purchase and defendant LunchboxWax Holdings purportedly did not assign the MSA to WellBiz as the purchaser. As a result, according to Warshawsky Seltzer, PLLC's letter, nothing further was due to Plaintiff by WellBiz.

35. Plaintiff performed all obligations to defendant LunchboxWax Holdings required under the MSA, as amended, except those that Plaintiff was prevented or excused from performing.

36. Defendant LunchboxWax Holdings has breached the MSA, as amended, through, among other things, its failure to make the payments to Plaintiff required thereunder, and its failure to require all franchises to enter into the joinder agreement. As to the payments that defendant LunchboxWax Holdings was required to but failed to make, these consist of but are not necessarily limited to liquidated damages starting from September 1, 2021, and the MyTime Scheduler Fees starting from August of 2021. Defendant LunchboxWax Holdings' breaches of the MSA, as amended, was a substantial factor in causing Plaintiff harm in an amount of not less than $720,000 ($20,000 per month for thirty-six months).

37. Plaintiff has initiated arbitration against LunchboxWax Holdings for Breach of the MSA and related claims, which is currently pending in Los Angeles, California as Case No. 01-23-0002-3876 (Melian Labs, Inc. dba MyTime vs. Lunchboxwax Holdings, LLC).

### FIRST CAUSE OF ACTION
### (Inducing Breach of Contract Against All Defendants)

38. Through this reference, Plaintiff incorporates the foregoing allegations of this complaint, as though set forth in full herein.

39. Plaintiff and LunchboxWax Holdings are parties to the MSA, as amended, which is a valid and enforceable contract.

40. The Individual Defendants had knowledge of the MSA, as amended, prior to defendant LunchboxWax Holdings' breach of same.

41. Through the actions described in this complaint, the Individual Defendants intended to cause defendant LunchboxWax Holdings to breach the MSA, as amended.

42. Through the actions described in this complaint, the Individual Defendants caused defendant LunchboxWax Holdings to breach the MSA, as amended.

43. The Individual Defendants' conduct was a substantial factor in causing Plaintiff harm.

44. Plaintiff has been damaged in an amount according to proof, but not less than $720,000 ($20,000 per month for thirty-six months).

## SECOND CAUSE OF ACTION
### (Intentional Interference with Contractual Relations Against All Defendants)

45. Through this reference, Plaintiff incorporates the foregoing allegations of this complaint, as though set forth in full herein.

46. Plaintiff and LunchboxWax Holdings are parties to the MSA, as amended, which is a valid and enforceable contract.

47. The Individual Defendants had knowledge of the MSA prior to its amendment and prior to LunchboxWax Holdings' breach of same.

48. The Individual Defendants had knowledge of MSA, as amended, prior to LunchboxWax Holdings' breach of same.

49. The conduct of the Individual Defendants prevented defendant LunchboxWax Holdings' performance under the MSA prior to its amendment, or otherwise made performance thereunder more expensive or difficult.

50. The conduct of the Individual Defendants prevented LunchboxWax Holdings' performance under the MSA, as amended, or otherwise made performance thereunder more expensive or difficult.



51. The Individual Defendants' conduct was a substantial factor in causing Plaintiff harm.

52. As a result of the Individual Defendants' intentional interference of the MSA, both in its non-amended and amended forms, Plaintiff has been damaged in an amount according to proof, but in excess of the jurisdictional minimum of this Court.

53. The Individual Defendants intentionally, willfully, fraudulently, egregiously, and maliciously did the things herein alleged, thereby entitling Plaintiff to punitive damages.

### THIRD CAUSE OF ACTION
### (Promissory Estoppel Against Individual Defendants)

54. Through this reference, Plaintiff incorporates the foregoing allegations of this complaint, as though set forth in full herein.

55. The Individual Defendants made certain clear and unambiguous promises to Plaintiff on which it relied upon to its detriment. Such promises include those discussed in the complaint, including but not limited to the following:

(1) defendant Demetriades' representation to Plaintiff on March 16, 2021 that "LunchboxWax was fully committed to going live with MyTime after the acquisition by WellBiz and simply needed an extra month finalize the transaction";
(2) defendant Demetriades' representation to Plaintiff on March 16, 2021 that he was lined up to be hired as the head of mergers and acquisitions at WellBiz, and his pressing of Plaintiff to accept the delayed rollout date in the spirit of future partnership and the possibility of rolling MyTime out to other WellBiz-owned brands;
(3) defendant Demetriades' representation to Plaintiff on or about mid-April 2021 that WellBiz/Lunchbox would "100% launch with MyTime", but that in order to ensure that result the rollout deadline needed to be significantly pushed back;
(4) defendant Lane's representation to Plaintiff on July 1, 2021 that the first amendment to the MSA would be signed by WellBiz "because WellBiz would be taking over the MSA"; and
(5) defendant Lane's representation on July 2, 2021 to Plaintiff that "WellBiz is an affiliate of LBW Holdings and LBW Franchise, which will be acquiring the agreement. WellBiz will manage the brand on behalf of the LBW entities."

56. Plaintiff relied on the aforementioned promises, among others, in foregoing enforcement of its rights under the MSA prior to its amendment and subsequent to its breach, and in agreeing to enter into the first amendment to the MSA.

57. Plaintiff's reliance on the aforementioned promises, among others, was reasonable because the Individual Defendants and Lunchbox Defendants were in a superior position relative to Plaintiff as to the information, to which information the Individual Defendants and

Lunchbox Defendants had exclusive access to. Under the circumstances, Plaintiff's reliance was foreseeable.

58. As a result of Plaintiff's reliance on the aforementioned promises, among others, Plaintiff was injured in that it forewent enforcement of its rights under the MSA prior to its amendment and subsequent to its breach, and in that it agreed to enter into the first amendment to the MSA (which reduced Plaintiff's rights that it otherwise had under the MSA).

59. As a result of Plaintiff's reliance on the aforementioned promises, among others, Plaintiff has been damaged in an amount according to proof at trial, but in excess of the jurisdictional minimum of this Court.

60. The Individual Defendants intentionally, willfully, fraudulently, and maliciously did the things herein alleged, thereby entitling Plaintiff to punitive damages.

### FOURTH CAUSE OF ACTION
### (False Promise Against Individual Defendants)

61. Through this reference, Plaintiff incorporates the foregoing allegations of this complaint, as though set forth in full herein.

62. The Individual Defendants made certain promises that such parties intended not to perform, and such were made to Plaintiff with the intention that Plaintiff place reliance on those promises. Such promises include those discussed in the complaint, including but not limited to the following:

(1) defendant Demetriades' representation to Plaintiff on March 16, 2021 that "LunchboxWax was fully committed to going live with MyTime after the acquisition by WellBiz and simply needed an extra month finalize the transaction";
(2) defendant Demetriades' representation to Plaintiff on or about mid-April 2021 that WellBiz/Lunchbox Defendants would "100% launch with MyTime", but that in order to ensure that result the rollout deadline needed to be significantly pushed back;
(3) defendant Lane's representation to Plaintiff on July 1, 2021 that the first amendment to the MSA would be signed by WellBiz "because WellBiz would be taking over the MSA"; and
(4) defendant Lane's representation on July 2, 2021 to Plaintiff that "WellBiz is an affiliate of LBW Holdings and LBW Franchise, which will be acquiring the agreement. WellBiz will manage the brand on behalf of the LBW entities."

63. Plaintiff relied on the aforementioned promises, among others, in foregoing enforcement of its rights under the MSA prior to its amendment and subsequent to its breach, and in agreeing to enter into the first amendment to the MSA.

64. Plaintiff's reliance on the aforementioned promises, among others, was reasonable because the Individual Defendants were in a superior position relative to Plaintiff as to the information, to which information the Individual Defendants had exclusive access to.

65. The Individual Defendants did not perform the aforementioned promises.

66. Plaintiff's reliance on the aforementioned promises, among others, was a substantial factor in causing Plaintiff harm.

67. As a result of Plaintiff's reliance on the aforementioned promises, among others, Plaintiff has been damaged in an amount according to proof at trial.

68. The Individual Defendants intentionally, willfully, fraudulently, and maliciously did the things herein alleged, thereby entitling Plaintiff to punitive damages.

### FIFTH CAUSE OF ACTION
### (Fraudulent Conveyance Against All Defendants)

69. Through this reference, Plaintiff incorporates the foregoing allegations of this complaint, as though set forth in full herein.

70. Plaintiff has a right to payment from defendant LunchboxWax Holdings under the terms of the MSA and/or MSA as amended, once breach of the MSA has been established.

71. On information and belief, the assets of Lunchbox were transferred to Radiant Waxing Franchise, LLC ("Radiant") through an asset transfer orchestrated with the assistance of WellBiz, Lunchbox and the Individual Defendants.

72. On information and belief, Lunchbox did not receive reasonably equivalent value in return for the transfer of their assets, and Lunchbox was engaged in a business or transaction for which the remaining assets were unreasonably small in relation to the business or transaction. That business or transaction was the obligations that it had under the MSA and/or MSA as amended.

73. On information and belief, Defendants transferred these assets with the intent to hinder, delay, or defraud Plaintiff, who is a creditor of LunchboxWax Holdings. Notably, the complete and accurate terms of the transfer was not disclosed to Plaintiff until after it occurred, until after the transfer of substantially all of Lunchbox' assets was completed, and until after Plaintiff had threatened LunchboxWax Holdings with suit prior to the transfer of assets. Lunchbox became insolvent shortly after the transfer was made, the transfer was made shortly after large debt to

Plaintiff was incurred, and Lunchbox concealed their assets in misrepresenting the actual assets owned.

74. On information and belief, Lunchbox Defendants and Individual Defendants caused Lunchbox' assets to be transferred to Radiant with the intent to ensure that Lunchbox would not have any remaining assets to fulfill applicable obligations under the MSA and/or MSA as amended.

75. Such conduct of Lunchbox and the Individual Defendants was a substantial factor in causing Plaintiff harm.

76. As a result of the fraudulent transfer, Plaintiff has been damaged in an amount according to proof at trial.

77. As a proximate result of the wrongful acts alleged herein, Plaintiff has and will incur attorney fees to prosecute the claims relating to the fraudulent transfer of assets. Under the tort-of-another doctrine, such fees are recoverable and sought.

78. Plaintiff seeks to have the fraudulent transfers voided.

79. Lunchbox and the Individual Defendants intentionally, willfully, fraudulently, and maliciously did the things herein alleged, thereby entitling Plaintiff to punitive damages.

## SIXTH CAUSE OF ACTION
### (Conspiracy Against Individual Defendants)

80. Through this reference, Plaintiff incorporates the foregoing allegations of this complaint, as though set forth in full herein.

81. On information and belief, Lunchbox and Individual Defendants played active roles in the acts described above with the actual intent to assist in defrauding creditors, and especially Plaintiff. Plaintiff further alleges that this allegation is likely to have evidentiary support after reasonable opportunity for further investigation or discovery.

82. Lunchbox and the Individual Defendants agreed and knowingly and willfully conspired to prevent Plaintiff from obtaining the benefits it was/is entitled to under the MSA and/or MSA as amended.

83. Lunchbox and the Individual Defendants did the acts and things alleged herein pursuant to, and in furtherance of, the conspiracy alleged above.

84. As a proximate result of the wrongful acts herein alleged, Plaintiff has been damaged in an amount according to proof at trial.

85. As a proximate result of the wrongful acts alleged herein, Plaintiff has and will incur attorney fees to prosecute the claims relating to the conspiracy. Under the tort-of-another doctrine, such fees are recoverable and sought.

86. Lunchbox and Individual Defendants knew that Plaintiff would rely on the assets of Lunchbox to obtain the benefits Plaintiff is entitled to under the MSA and/or MSA. Notwithstanding this knowledge, Lunchbox and the Individual Defendants intentionally, willfully, fraudulently, and maliciously did the things herein alleged to defraud and oppress Plaintiff, thereby entitling Plaintiff to punitive damages.

### SEVENTH CAUSE OF ACTION
### (Aiding and Abetting Fraudulent Transfer of Assets Against Individual Defendants)

87. Through this reference, Plaintiff incorporates the foregoing allegations of the complaint, as though set forth in full herein.

88. On information and belief, Lunchbox and Individual Defendants aided and abetted and carried out the fraudulent transfers described above by providing substantial assistance and encouragement to each other in consummating this transaction. At all relevant times, Lunchbox and the Individual Defendants knew that Plaintiff was entitled to benefits under the MSA and/or MSA as amended, yet they participated in a premeditated scheme to transfer assets with the intent to defraud Plaintiff and other creditors. Plaintiff further alleges that this allegation is likely to have evidentiary support after reasonable opportunity for further investigation or discovery.

89. As a proximate result of the wrongful acts herein alleged, Plaintiff has been damaged in an amount according to proof at trial.

90. As a proximate result of the wrongful acts alleged herein, Plaintiff has and will incur attorney fees to prosecute the claims relating to the aiding and abetting of fraudulent transfer of assets claim. Under the tort-of-another doctrine, such fees are recoverable and sought.

91. Lunchbox and the Individual Defendants knew that Plaintiff would rely on the assets Lunchbox to obtain the benefits Plaintiff is entitled to under the MSA and/or MSA as amended. Notwithstanding this knowledge, Lunchbox and the Individual Defendants intentionally,

willfully, fraudulently, and maliciously did the things herein alleged to defraud and oppress Plaintiff, thereby entitling Plaintiff to punitive damages.

## PRAYER FOR RELIEF

1. For damages in an amount according to proof, but not less than $750,000.
2. For punitive and exemplary damages to the fullest extent permitted by law.
3. For the transfer of assets to be voided.
4. For costs.
5. For reasonable attorney's fees to the extent permitted by law.
6. For such other relief as the Court deems just and proper.

Dated: August 8, 2023                                    RIDDICK LAW, A.P.C.

By: _____/s/ Jason Riddick_____
   Jason T. Riddick, Esq.
   Attorneys for Plaintiff
   MELIAN LABS, INC. dba MYTIME

**Demand For Jury Trial**

Plaintiff request a jury trial on all claims and issues so triable.

Dated: August 8, 2023                                      RIDDICK LAW, A.P.C.


By: _____
Jason T. Riddick, Esq.
Attorneys for Plaintiff
MELIAN LABS, INC. dba MYTIME

